**PROJECT 80'S, INC. and David John Fitzen, Plaintiffs–Appellants,**

v.

**CITY OF POCATELLO and the City of Idaho Falls, Idaho, Defendants–Appellees.**

No. 86–4348.

United States Court of Appeals, Ninth Circuit.

Aug. 19, 1991.

F. Michael Burkett, Martin, Chapman, Park & Burkett, Boise, Idaho, for plaintiffs-appellants.

Nancy A. Ferris, Pocatello, Idaho, for defendant-appellee City of Pocatello.

Dale W. Storer, Anderson, Pike & Bush, Idaho Falls, Idaho, for defendant-appellee City of Idaho Falls.

Before CANBY, REINHARDT and BEEZER, Circuit Judges.

CANBY, Circuit Judge:

This case has been remanded by the Supreme Court for our reconsideration in light of its recent decision in *Board of Trustees of State University of New York v. Fox*, 492 U.S. 469, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989). When the matter was last before us, we held that two city ordinances prohibiting uninvited door-to-door solicitation violated the first amendment. *Project 80's, Inc. v. City of Pocatello*, 876 F.2d 711 (9th Cir.1988). The Supreme Court granted certiorari, vacated our decision, and remanded the case for reconsideration. *City of Idaho Falls, Idaho v. Project 80's, Inc.*, —— U.S. ——, 110 S.Ct. 709, 107 L.Ed.2d 730 (1990).[1]

## BACKGROUND

Plaintiffs Project 80's, Inc. and David Fitzen[2] brought an action challenging the constitutionality of two city ordinances banning door-to-door solicitation and seeking declaratory and injunctive relief against their enforcement.[3] The two ordinances are almost identical. The Idaho Falls ordinance provides:

UNINVITED PEDDLERS PROHIBITED: The practice of going in and upon private residences in the Municipality by solicitors, peddlers, hawkers, itinerant merchants or transient vendors of merchandise, not having been requested or invited to do so by the owner or occupant of said private premises, for the purpose of soliciting orders for the sale of goods, wares and merchandise and/or disposing of and/or peddling or hawking the same

---

1. We ordered and received supplemental briefing after the Supreme Court's remand. The case is hereby ordered submitted on those briefs and the previous briefs and record.

2. Unless otherwise indicated, references to "Project 80's" in this opinion include Fitzen.

3. The full facts are set out in our prior decision. *Project 80's, Inc. v. City of Pocatello*, 876 F.2d 711 (9th Cir.1988).

is hereby prohibited and punishable under the provisions of this Code.

Idaho Falls City Code § 5–4–1. The Pocatello ordinance is to the same effect, except that it contains a proviso that "persons who solicit donations for charitable or non-profit organizations shall not be deemed to be in violation" of the ordinance. Pocatello City Ordinance No. 9.24.010. The district court granted summary judgment for the cities.

On appeal, we reversed, holding that the ordinances could not be sustained as valid regulations of commercial speech or as permissible time, place, and manner restrictions. In determining whether the ordinances impermissibly burdened commercial speech, we applied the test articulated by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).[4] At the time there was a dispute among the circuits as to what was required under the *Central Hudson* test. We agreed with the Second Circuit decision in *Fox v. Board of Trustees of State University of New York*, 841 F.2d 1207 (2d Cir.1988), that the fourth prong of the *Central Hudson* test embodied a "least restrictive alternative" requirement. Similarly, we applied a least restrictive means test in determining whether the ordinances were permissible time, place, and manner restrictions. Because the ordinances swept far more broadly than necessary, we held that the ordinances violated the first amendment under either analysis.

Subsequently, the Supreme Court granted certiorari in *Board of Trustees of State University of New York v. Fox*, 488 U.S. 815, 109 S.Ct. 52, 102 L.Ed.2d 31 (1988), to determine whether the fourth prong of the *Central Hudson* required a least restrictive means analysis. The Court noted that its earlier dicta might have suggested such

a requirement, but concluded, after reviewing its earlier decisions, that something less than the least restrictive means was required. *Fox*, 492 U.S. at 476–477, 109 S.Ct. at 3032–3033. The Court also asserted that it had not imposed a least restrictive means requirement in assessing time, place, and manner restrictions. *Id.* at 477, 109 S.Ct. at 3033.

## DISCUSSION

■ The *Fox* decision requires us to determine whether the two ordinances can survive a first amendment challenge in the absence of the requirement that they be the least restrictive means to serve the cities' interests. After reviewing the *Fox* decision and additional briefing submitted by the parties, we conclude that the ordinances cannot be sustained either as permissible regulations of commercial speech or as valid time, place, and manner restrictions.

*Commercial Speech*

To satisfy the fourth element of the *Central Hudson* test as formulated by the Supreme Court in *Fox*, Idaho Falls and Pocatello must affirmatively prove that the ordinances are narrowly tailored to serve substantial governmental interests. *Fox*, 492 U.S. at 480, 109 S.Ct. at 3035. According to the Court, the cities discharge this burden by showing that there is:

a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the ends served; that employs not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.

4. In *Central Hudson*, the Supreme Court adopted a four-prong test for regulation of commercial speech:

At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next,

we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. at 2351.

*Id.* at 480, 109 S.Ct. at 3035 (internal quotations and citations omitted). Thus, we must determine whether Idaho Falls and Pocatello have proved that there is a reasonable fit between the cities' interests and the scope of the ordinances.

Idaho Falls asserts that it has a governmental interest in protecting the privacy and repose of its citizens in their homes. To this Pocatello adds the interests of consumer protection, regulation of commercial transactions, and prevention of crime. We previously accepted the cities' asserted interests in protecting privacy, preventing crime, and protecting consumers as substantial state interests. *Project 80's*, 876 F.2d at 714. We also observed that only the cities' interests in protecting privacy and "marginally" that of preventing crime, were advanced by the ordinances. *Id.* at 714–15.

Despite these substantial interests, we again conclude that the cities' prohibition on door-to-door solicitation sweeps far more broadly than necessary to protect the governmental interests. As we observed in our earlier opinion, it is difficult to violate a person's privacy unless that person wishes to be let alone. The ordinances thus do not protect the privacy when applied to residences whose occupants welcome uninvited solicitors. Moreover, there is little evidence that the ordinances protect residences from crime. The ordinances do not prohibit strangers from approaching the residences or from coming to the doorsteps to leave handbills. Finally, there is no evidence that the ordinances protect consumers. Pocatello has not shown that door-to-door solicitation resulted in overreaching, or that consumers were more susceptible to unfair sales pitches when approached at their residence. *Project 80's*, 876 F.2d at 714; *cf. National Funeral Services, Inc. v. Rockefeller*, 870 F.2d 136 (4th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 409, 107 L.Ed.2d 374 (1989).[5]

In *Fox*, the Supreme Court noted that the restrictions disallowed under *Central Hudson*'s fourth prong were "substantially excessive, disregarding 'far less restrictive and more precise means.'" *Fox*, 492 U.S. at 479, 109 S.Ct. at 3034 (quoting *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466, 476, 108 S.Ct. 1916, 1923, 100 L.Ed.2d 475 (1988)). In our earlier decision, we detailed less restrictive means available to the cities to protect their interests:

> Privacy is easily served by prohibiting solicitation at households that have posted a sign or listed themselves in a registry; crime can be regulated by licensing, registration, and normal enforcement. Consumer protection, an interest the cities have not elaborated upon, can be served by providing for a period of free rescission of sales.

*Project 80's*, 876 F.2d at 718. By pointing out the alternatives available to the cities to advance their interests, we do not impose a least restrictive means requirement. Rather, we conclude, as did the Supreme Court in *Fox*, that restrictions which disregard far less restrictive and more precise means are not narrowly tailored.

Idaho Falls and Pocatello argue that their ordinances are narrowly tailored to protect privacy because they prohibit only unwanted and uninvited door-to-door solicitation. In support, the cities assert that in-home sales are not prohibited. According to the cities, residents may invite salespersons to their doors or post a "Solicitors Welcome" sign on their homes. Solicitors also may obtain an invitation to a resident's home by referral, telephone, mail, or by leaving a flyer at the door advising the resident that he or she can arrange for a sales representative to visit.

We disagree. Although the ordinances do not prohibit in-home sales, they do ban both wanted *and* unwanted door-to-door so-

---

**5.** In *Rockefeller,* the Fourth Circuit upheld an ordinance prohibiting door-to-door and phone solicitation of pre-need funeral contracts because such transactions were particularly prone to fraud and overreaching. The court also upheld the ordinance because it furthered the governmental interest in protecting privacy. In reaching this result, however, the court noted that the ordinance was not a blanket prohibition of all commercial telemarketing, but rather of a particular type prone to abuse. *Rockefeller,* 870 F.2d at 146 n. 17.

licitations. Under the Idaho Falls and Po-catello ordinances, residents who wish to receive uninvited door-to-door solicitors must post a "Solicitors Welcome" sign. The government's imposition of affirmative obligations on the residents' first amendment rights to receive speech is not permissible. *See Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 69–70 n. 18, 103 S.Ct. 2875, 2881–2882 n. 18, 77 L.Ed.2d 469 (1983); *Lamont v. Postmaster General*, 381 U.S. 301, 307, 85 S.Ct. 1493, 1496, 14 L.Ed.2d 398 (1965).

We also reject the cities' argument that the ordinances are narrowly tailored because they prohibit only one type of communication—door-to-door solicitation.[6] In *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the Supreme Court rejected the argument that an ordinance banning "for sale" signs was a valid regulation of speech because sellers of residences had alternative avenues for communicating their message. The Court reasoned that options that involve "more cost and less autonomy" to the seller, that are less likely to reach those persons "not deliberately seeking sales information," and that may be less effective media for communicating the message, "are not satisfactory substitutes for speech that is prohibited." *Id.* at 93–94, 97 S.Ct. at 1618–1619. Because door-to-door distribution may be the most effective way to disseminate information, *see Martin v. City of Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943), we are reluctant to foreclose this avenue of communication.

*Time, Place, and Manner*

The application of the *Central Hudson* test is "substantially similar" to the test for the validity of time, place, and manner restrictions upon protected speech. *Fox*, 492 U.S. at 477, 109 S.Ct. at 3033. Accordingly, Idaho Falls and Pocatello advance the same arguments in support of their ordinances.

---

**6.** Idaho Falls and Pocatello assert that the ordinances are narrowly tailored because Project 80's may advertise its goods through media or

We reject these arguments for the reasons discussed above. Our prior decision supports this result. Although we previously concluded that the two ordinances were not valid time, place, and manner restrictions on commercial speech because the ordinances were not the least restrictive means to serve the cities' interests, we also emphasized that in the absence of a least restrictive means requirement, "the ordinances of Idaho Falls and Pocatello fall short of any reasonable requirement of necessity." *Project 80's*, 876 F.2d at 718.

## CONCLUSION

The summary judgments in favor of Idaho Falls and Pocatello are reversed. The case is remanded for further proceeding consistent with this opinion.

flyers and may sell its goods elsewhere in the city.